Case No. 1:16-cv-00333-MP-GRJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

IN RE:

MATTHEW BRUCE HINTZE AND LARINA K. HINTZE,

DEBTORS,

CHRISTOPHER M. JAMES,

APPELLANT,

V.

FLH HOLDINGS OF FLORIDA, LLC, JOHN SPENCE, SHEILA SPENCE, INTERMED BIOMEDICAL SERVICES, INC., AND DAVID WHITNEY,

APPELLEES.

**INITIAL BRIEF OF APPELLANT, CHRISTOPHER M. JAMES**
Appeal of orders by the United States Bankruptcy Court, Northern District of Florida

RYAN E. DAVIS
Florida Bar No. 0179851
rdavis@whww.com
C. ANDREW ROY
Florida Bar No. 91629
aroy@whww.com
WINDERWEEDLE, HAINES, WARD
  & WOODMAN, P.A.
Post Office Box 880
Winter Park, FL 32790-0880
 (407) 423-4246
Attorneys for Christopher James

# **TABLE OF CONTENTS**

Table of Contents ..................................................................................II

Table of Authorities ............................................................................ IV

Oral Argument ......................................................................................1

Statement of the Basis of Appellate Jurisdiction ........................................2

Statement of Issues Presented ...............................................................3

Reference to Record, Appendix, and Parties ............................................4

Statement of the Case and Facts ............................................................6

     A.   The events preceding the dismissal with prejudice..............................7

     B.   The filing of the Amended Complaint. ..............................................11

     C.   The dismissal with prejudice.............................................................13

     D.   The orders on appeal. .......................................................................14

Summary of Argument ...........................................................................17

Argument...............................................................................................21

I.   THE BANKRUPTCY COURT ERRED IN REFUSING TO APPLY
THE DOCTRINE OF RES JUDICATA TO BAR THE ESTATE
CREDITORS FROM LITIGATING CLAIMS ARISING OUT OF
THE SAME NUCLEUS OF OPERATIVE FACTS AS CLAIMS
THAT HAD BEEN ADMINISTERED AND DISMISSED, WITH
PREJUDICE, BY THE TRUSTEE...............................................................21

     A. By dismissing the IP Transfer Claims, the Trustee
administered her claims against James to final judgment;
she did not abandon them..................................................................22

     B. The Estate Creditors' IP Transfer Claims against James
arise from the same nucleus of operative facts as the
Trustee's causes of action against James. ..........................................25

C. The Estate Creditors are bound by the actions of the Trustee, and thus are bound by res judicata as to the dismissal with prejudice of the claims against James. ........................31

II. THE BANKRUPTCY COURT ERRED IN HOLDING THAT THE ESTATE CREDITORS' COMMENCEMENT AND CONTINUATION OF A LAWSUIT TO RECOVER PRE-PETITION CLAIMS AGAINST THE DEBTOR DID NOT CONSTITUTE A VIOLATION OF AUTOMATIC STAY UNDER § 362(A) OF THE BANKRUPTCY CODE AND WAS NOT VOID. ........................................34

A. The filing of the Amended Complaint violated the automatic stay, which was still in effect. ..............................................34

B. The Amended Complaint should be deemed void. .............................39

C. The willful nature of the violation entitles James to recover damages pursuant to the plain and unambiguous language of § 362(k) .............................................................................40

D. James had standing to enforce the automatic stay because the automatic stay protects him from facing duplicative litigation and liability. ........................................................................42

Conclusion ........................................................................................................46

Certificate of Compliance ................................................................................48

Certificate of Service ........................................................................................49

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>In re Albany Partners, Ltd.</u>,
    749 F.2d 670 (11th Cir. 1984)....................................................................38

<u>In re Ampal-American Israel Corp.</u>,
    502 B.R. 361 (Bankr. S.D.N.Y. 2013) ....................................................42

<u>Astron Indus. Assoc., Inc. v. Chrysler Motors Corp.</u>,
    405 F.2d 958 (5th Cir. 1968)............................................ 21, 24, 25, 26, 30, 31

<u>In re Berg</u>,
    376 B.R. 303 (Bankr. D. Kan. 2007).......................................................31

<u>Bonner v. City of Prichard</u>,
    661 F.2d 1206 (11th Cir.1981) ................................................................21

<u>Borg-Warner Acceptance Corporation v. Hall</u>,
    685 F.2d 1306 (11th Cir. 1982) ..............................................................38

<u>Borman v. Raymark Industries, Inc.</u>,
    946 F.2d 1031 (3d Cir. 1991) ..................................................................36

<u>In re Brown</u>,
    251 B.R. 916 (M.D. Ga. 2000).................................................................38

<u>In re C.D. Jones & Co., Inc.</u>,
    482 B.R. 449 (Bankr. N.D. Fla. 2012) ........................................... 34, 36

<u>In re Clemmer</u>,
    178 B.R. 160 (Bankr. E.D. Tenn. 1995)..................................................42

<u>Commodore Holdings, Inc. v. Exxon Mobil Corp.</u>,
    331 F.3d 1257 (11th Cir. 2003) .................................................................2

Eldorado Canyon Properties, LLC v. Montalvanos,
   515 B.R. 852 (M.D. Fla. 2014)...............................................................3

In re Fordu,
   201 F.3d 693, 705 (6th Cir. 1999).......................................................29

In re Hewett,
   2016 WL 4401034 (Bankr. M.D. Fla. 2016).........................................38

JAWHBS LLC v. Arevalo,
   2016 WL 4142498 (S.D. Fla. Aug. 4, 2016) ................................. 30, 31

In re Kilmer,
   501 B.R. 208 (Bankr. S.D.N.Y. 2013) .................................................38

Lexmark Intern., Inc. v. Static Control Components, Inc.,
   134 S.Ct. 1377 (2014) .........................................................................41

In re Medomak Canning,
   922 F.2d 895 (1st Cir. 1990) ...............................................................31

Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,
   132 S.Ct. 2199 (2012) .........................................................................42

In re Mitchell,
   281 B.R. 90 (Bankr. S.D. Ala. 2001) ............................................. 20, 32

Norfolk Southern Corp. v. Chevron, U.S.A., Inc.,
   371 F.3d 1285 (11th Cir. 2004)...........................................................21

In re Old Naples Securities, Inc.,
   343 B.R. 310 (Bankr. M.D. Fla. 2006)................................................29

Parker v. Credit Central South, Inc.,
  634 Fed. Appx. 770 (11th Cir. 2015) ...................................................................40

In re Piper Aircraft Corp.,
  244 F.3d 1289 (11th Cir. 2001) ................................................ 3, 19, 24, 25, 27, 28

Ragsdale v. Rubbermaid, Inc.,
  193 F.3d 1235 (11th Cir. 1999) ...........................................................................24

In re Residential Capital, LLC,
  508 B.R. 838 (Bankr. S.D.N.Y. 2014) ........................................................... 20, 32

Matter of Ring,
  178 B.R. 570 (Bankr. S.D. Ga. 1995) ............................................................. 38, 42

St. Paul Fire & Marine Ins. Co. v. PepsiCo., Inc.,
  884 F.2d 688 (2d Cir. 1989) ................................................................................30

In re Saunders,
  101 B.R. 303 (Bankr. N.D. Fla. 1989) ........................................................ 33, 34, 35

Steffen v. Gray, Harris, & Robinson, P.A.,
  283 F. Supp. 2d 1272 (M.D. Fla 2003) .................................................................33

In re Teleservices Group, Inc.,
  463 B.R. 28 (Bankr. W.D. Mich. 2012) ..................................................... 41, 42, 43

In re Teltronics Services, Inc.,
  39 B.R. 446 (Bankr. E.D.N.Y. 1984) ....................................................................23

In re Tessmer,
  329 B.R. 776 (Bankr. M.D. Ga. 2005) ........................................................... 26, 31

In re Xenerga, Inc.,
  449 B.R. 594 (Bankr. M.D. Fla 2011) .......................................................... 34, 36

VI

## Statutes

11 U.S.C. § 362(a) ........................................................................ passim
11 U.S.C. § 362(c) .................................................................................37
11 U.S.C. § 362(d) ................................................................................32
11 U.S.C. § 362(k) ............................................................... 38, 40, 41, 42
11 U.S.C. § 548 .....................................................................................29
11 U.S.C. § 554 .....................................................................................22
28 U.S.C. § 1334 .....................................................................................2
28 U.S.C. § 157 ...................................................................................2, 20
28 U.S.C. § 158 .......................................................................................2
Chapter 726, Fla. Stat. ...........................................................................29

## Rules

Bankr. N.D. Fla. Local Rule 6007-1 ......................................................23
Fed. R. Bankr. P. 6007 ..........................................................................23
Fed. R. Bankr. P. 8019 ............................................................................1
Fed. R. Civ. P. 41 ..................................................................................21

## Other Authorities

1B Moore, Federal Practice P0.411(1), (2d ed. 1965)..............................30
H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 341 (1977) ........................35

# ORAL ARGUMENT

Appellant requests oral argument in this appeal because of the nuances and complexity of the procedural history in this case, which involved a settlement agreement that morphed into an auction before the bankruptcy court. Appellant maintains, however, that controlling precedent has authoritatively decided the legal issues presented in this appeal: the applicability of res judicata and whether the automatic stay was violated. Oral argument will also allow the parties to directly address any potential questions the Court may have that may not have been answered in the briefs. Federal Rule of Bankruptcy Procedure 8019(b) creates a presumption in favor of oral argument, and the circumstances of this appeal do not overcome that presumption.

## <u>STATEMENT OF THE BASIS OF APPELLATE JURISDICTION</u>

The bankruptcy court had jurisdiction to enter the orders on appeal pursuant to 28 U.S.C. § 1334(a), (b), and (e), 28 U.S.C. § 157(b)(2)(A), (F), (G), (H), (N), and (O), and this Court's Standing Order of Reference dated June 5, 2012. The orders on appeal concern the preclusive effect of the administration of a cause of action by a bankruptcy trustee, and the applicability/enforcement of the automatic stay.

This is an appeal as of right as an appeal from final orders rendered by the bankruptcy court, and this Court has appellate jurisdiction to review the final orders pursuant to 28 U.S.C. § 158(a)(1). <u>See</u> <u>Commodore Holdings, Inc. v. Exxon Mobil Corp.</u>, 331 F.3d 1257, 1259 (11th Cir. 2003).

The orders on appeal were entered on October 17, 2016, and Appellant timely filed his notice of appeal on October 27, 2016.

## STATEMENT OF ISSUES PRESENTED

I. WHETHER THE BANKRUPTCY COURT ERRED IN REFUSING TO APPLY THE DOCTRINE OF RES JUDICATA TO DENY RELIEF FROM STAY AND BAR ESTATE CREDITORS FROM LITIGATING CLAIMS ARISING OUT OF THE SAME NUCLEUS OF OPERATIVE FACTS AS CLAIMS THAT HAD BEEN DISMISSED, WITH PREJUDICE, BY THE CHAPTER 7 TRUSTEE.

For the first issue, "[t]he standard of review is clear. A court's application of res judicata presents questions of law reviewed de novo. This standard applies to res judicata determinations made originally by bankruptcy courts. De novo review requires the court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions." In re Piper Aircraft Corp., 244 F.3d 1289, 1295 (11th Cir. 2001) (internal citations omitted).

II. WHETHER THE BANKRUPTCY COURT ERRED IN HOLDING THAT THE ESTATE CREDITORS' COMMENCEMENT OF A LAWSUIT TO RECOVER PRE-PETITION CLAIMS AGAINST THE DEBTOR DID NOT CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY UNDER § 362(A) OF THE BANKRUPTCY CODE AND WAS NOT VOID.

For the second issue, this Court, in its appellate capacity, reviews de novo a bankruptcy court's conclusions of law, such as the applicability of the automatic stay, as well as mixed question of law and fact. See Eldorado Canyon Properties, LLC v. Montalvanos, 515 B.R. 852, 854 (M.D. Fla. 2014). Thus, the only applicable standard of review for this appeal is the de novo standard.

## REFERENCE TO RECORD, APPENDIX, AND PARTIES

The Record on Appeal is filed in this Court's appellate docket at entries 2 through 5, and entries 6 through 8 contain transcripts of hearings held in the bankruptcy court. Any citation to the Record is in the form of (R.XX,YY), with XX representing the docket entry from the appeal docket, and YY representing the page number in the PDF of the docket entry. For example, (R.5-4, 321) is the first page of the Motion to Deem Amended Complaint as Void.

Pursuant to Rule 8018, Appellant has prepared an Appendix to accompany this brief. The Appendix contains the most critical aspects of the Record and is bookmarked and linked for ease of use in Adobe Acrobat. Any citation to the Appendix is in the form of (A.XX), with XX representing the page number in the PDF form of the Appendix. For example, (A.59) is the first page of the Trustee's Motion for Voluntary Dismissal. To navigate to that part of the Appendix, enter the page number cited into the page navigation box, use the built-in bookmarks, or simply click on the document name in the table of contents in the Appendix. Most of Appellants citations are to the Appendix.

The full docket of the main bankruptcy case is at docket entry 5-1. The full docket of Adversary Proceeding No. 14-01005-KKS is at docket entry 5-3.

For furtherease of reference, Appellant also supplies the following defined terms for purposes of referring to the various parties relevant to this appeal:

**"Debtors"** – Matthew and Larina Hintze are the debtors who filed the underlying Chapter 7 bankruptcy case.

**"TZI"** – TutoringZone, LC is a Gainesville tutoring business that was owned by the Debtors when they filed their bankruptcy case.

**"James" or "Appellant"** – Dr. Christopher James is the Appellant. He is a creditor of the Debtors' bankruptcy estate, and he was also a defendant in litigation by the Trustee, which has been dismissed, with prejudice. He is also a defendant in litigation by the Estate Creditors, which is based on the same nucleus of operative facts and which seeks to remedy the same alleged wrong as the Trustee's litigation.

**"Trustee"** – Theresa Bender is the Chapter 7 bankruptcy trustee.

**"Estate Creditors" or "Appellees"** – John Spence, Sheila Spence, Intermed Biomedical Services, Inc., David Whitney, and FLH Holdings of Florida, LLC ("FLH") are the Appellees. They are each creditors of the Debtors' bankruptcy estate, and they are also suing James in state court based on the same facts on which the Trustee sued James in the bankruptcy case.

**"TZ Acquisition"** – TZ Acquisition is a special purpose entity with common ownership with one of the Estate Creditors, FLH. TZ Acquisition bought certain causes of action and the estate's interest in the membership interest in TZI from the Trustee. TZ Acquisition has filed a separate lawsuit from the Appellees in state court that involves the same transfer.

## STATEMENT OF THE CASE AND FACTS

The bankruptcy court erred in finding that the doctrine of res judicata did not preclude subsequent litigation arising out of, as the bankruptcy court acknowledged, "the same overall facts" as litigation previously dismissed with prejudice. (A.317.) As a result of the error, Appellant, Christopher James, now faces litigation in state court by the Appellees identical in nature to litigation previously dismissed against him, with prejudice, by the Trustee in bankruptcy court. The substance of both lawsuits involves the same purported transfer of certain intellectual property ("Intellectual Property") from a Gainesville tutoring company, TutoringZone, LC ("TZI"), to James during the summer of 2012. As explained by the bankruptcy court, "the causes of action [in the Trustee's litigation and the Appellees' state court litigation] arise out of the same nucleus of facts." (A.324.)

In addition to resting upon the same nucleus of facts, the Trustee's and the Appellees' causes of action rely upon a common theory: that the transfer of the Intellectual Property was a de facto transfer of the membership interest in TZI. For example, the Trustee's lawsuit, Adversary Proceeding No. 14-01005-KKS (the "Adversary Proceeding"), alleged that "[t]he practical economic reality of the transaction was an indirect method of disposing of the membership interest in TutoringZone." (A.41-46.) Meanwhile, the Appellees' state court lawsuit alleges

the same: "[a]lthough the form was of a transfer of the assets of TutoringZone, the substance was a transfer of the entire value of the [Debtors'] ownership interest in TutoringZone to TutoringZone II." (A.176 & 193.) Despite the glaring similarities between the two lawsuits, the bankruptcy court refused to apply the doctrine of res judicata, instead finding that the doctrine was inapplicable because the Adversary Proceeding involved "strictly bankruptcy causes of action," while the state court action involved state law claims. (A.321.)

The bankruptcy court acknowledged that its ruling was also driven by "other considerations," including a finding that the dismissal, with prejudice, was some type of abandonment of the causes of action by the Trustee. (A.325.) The history behind the dismissal compels a different conclusion and indicates that the Trustee's dismissal was intended to maximize the value of certain assets at an auction and was not simply the byproduct of an uninterested Trustee.

### A. The events preceding the dismissal with prejudice.

Prior to the dismissal with prejudice and after over a year and a half of litigation, the Trustee entered into a settlement agreement with James to resolve the Adversary Proceeding (the "Settlement"). (A.67-91.) The Settlement provided for a dismissal with prejudice of each count in the Adversary Proceeding in exchange for a payment in the amount of $30,000 from James. The Settlement was subject to Court approval under Bankruptcy Rule 9019, as is typical in bankruptcy cases. Id.

Appellees, John Spence, Sheila Spence, Intermed Biomedical Services, Inc., David Whitney, and FLH Holdings of Florida, LLC ("FLH") (collectively, the "Estate Creditors"), all of whom are creditors of the estate, objected to the Settlement. (A.5-4,39-55.) In connection with the objection, Appellees, through an affiliated special purpose entity, TZ Acquisition, offered to purchase the causes of action contained within the Adversary Proceeding, along with the membership interest in TZI (the "Assets"), which led to an auction of the Assets before the bankruptcy court (the "Auction"). (R.5-4,108-10.)

Prior to the Auction, James objected as to whether the avoidance actions against James, Counts XIII-XV ("Trustee's IP Transfer Claims")[1] of the twenty count Adversary Proceeding, could be legally conveyed by the Trustee to a third party, such as TZ Acquisition. (A.108-16). With the conveyance question looming, the bankruptcy court entered an Order, warning that the winning bidder would "bear the risk that certain claims/causes of action may not be transferable . . . ." (A.94-95.)

In light of the conveyance question, James asked the Trustee in writing whether there would be "continuing litigation by the Trustee" after the Auction, which was a critical issue for James. (A.286.) The extent of James' willingness to bid hinged upon the Trustee's reply as James did not want to risk being the

---

[1] Count XIII was a preference count; Counts XIV and XV were fraudulent transfer counts.

"winning" bidder only to face additional litigation. (A.238-85.) In response, the Trustee notified the interested bidders, including the Estate Creditors' counsel, that:

> From the Trustee's perspective, the intent of the sale is to divest all significant litigable positions of the estate and maximize value for those assets . . . .  Put more plainly, the estate does not intend to be a <u>competitor</u> of any prevailing bidder. The estate will not sell to a party and then seek to rush to judgment and obtain remedies on a parallel theory ahead of the prevailing bidder.  Practically speaking, this would mean that the Trustee <u>will dismiss counts 13-15 if retained</u>.

(A.106-07) (emphasis in original). Thus, the Trustee unequivocally advised the interested parties, including the Estate Creditors, that she would dismiss her IP Transfer Claims if they did not transfer to the winning bidder. As explained by the Trustee, the promise was intended to "maximize value" for the Assets, as it ensured that the winning bidder would not face competition by the Trustee. The Trustee's representation also assured James that he would not risk becoming the winning bidder only to face additional litigation related to the transfer of Intellectual Property. (A.283-85.)

Considering the importance of the issue, James' counsel advised on the record in open court, before the Auction commenced, that James' bidding was predicated upon the Trustee's prior representation regarding the dismissal of the Trustee's IP Transfer Claims:

> [A]s to whatever causes of action may be remaining or left over, for whatever reason, with the estate, the Trustee has made it very clear in writing to the parties, and in filings with the Court, that those leftover causes of action will not be pursued, at least not the ones against TutoringZone II, Chris James, or Cynthia Frenchman.
>
> And so our bid is with that assumption that we are buying a piece [sic[2]], at least vis-à-vis the bankruptcy estate and the Trustee, Your Honor, and that's what we've been told.

(A.126.) The Estate Creditors' counsel, who appeared at and participated in the Auction, did not object. The bankruptcy court did not indicate any issue or concern with the Trustee's dismissal stipulation. Id. Relying upon the Trustee's written promise of dismissal, James bid multiple times at the Auction, eventually bidding up to $115,000. (A.143.) After numerous rounds of bidding solely between TZ Acquisition and James, TZ Acquisition was ultimately the high bidder, in the amount of $120,000, for the benefit of the estate and its creditors.  By all accounts, the auction was a success. (R.5-4, 211-12) ("Today obviously has resulted in a much more generous result for the creditors in the case.") Without the Trustee's promise of dismissal, James may not have tendered his initial qualified overbid, in the amount of $45,000, and certainly would not have bid up to $115,000. (A.283-82.) Without question, the Auction would not have been nearly as successful as there were no other bidders other than TZ Acquisition and James.

---

[2] "A piece" should be "peace."

10

B.  The filing of the Amended Complaint while the automatic stay was in effect.

Just a few days after the Auction, and well before the conveyance issue had been resolved, the Estate Creditors, **in their individual capacity**,[3] sued James in state court in an action styled FLH Holdings of Florida, LLC, et. al. v. Christopher James, et. al., in the Circuit Court, Eighth Judicial Circuit, in and for Alachua County, Florida, Case No.: 01-2016-CA-538 (the "State Court Action") (A.248-49.) James responded with a Motion to Dismiss based upon a lack of standing. (A..249.) The Estate Creditors then amended their complaint ("Amended Complaint"), which adopted the Trustee's theory that the purported conveyance of the Intellectual Property to James was, in effect, a transfer of the membership interest in TZI. (A.176 & 193.) The Amended Complaint seeks relief based upon the transfer under five different counts, but all five counts "are based on the same overall facts" related to the transfer, as acknowledged by the bankruptcy court (A.317.) The Estate Creditors even acknowledge that the claims are "facially similar" to the Trustee's. (A.243.) A more apt description may be that the Amended Complaint was a "cut and paste" of the Adversary Proceeding.

---

[3] Notably, if TZ Acquisition was not effectively another collection arm of the Estate Creditors, TZ Acquisition would have personally joined James in this appeal because the Estate Creditors are directly competing with TZ Acquisition for recovery stemming from the Intellectual Property – completely undermining the terms of the sale and the benefit of exclusivity for which TZ Acquisition bargained and paid $120,000.

Collectively, the counts of the Amended Complaint shall be referred to as the "Estate Creditors' IP Transfer Claims." [4]

The Estate Creditors did not seek relief from the automatic stay prior to filing the Amended Complaint even though the Amended Complaint was based upon the "same nucleus of facts" as the Adversary Proceeding and even though the Amended Complaint adopted the Trustee's theory. The Amended Complaint also asserted an "alter ego" theory for the first time, contending that the transfer was a transfer from the Debtors, not TZI, due to alter ego. (A.185-87.)

Importantly, at the time of filing of the Amended Complaint, the bankruptcy case had not been closed or dismissed, nor had the bankruptcy discharge been issued. See (R.5-1.) Furthermore, the Trustee had not abandoned her IP Transfer Claims. To the contrary, the Trustee had prosecuted her IP Transfer Claims and then attempted to sell them through the court-supervised Auction. (A.566; R.5-4, 108-10.) As such, the automatic stay was still in effect.

In response to the Amended Complaint, James first filed a motion to dismiss in state court, which raised the automatic stay issue, among other issues. (R.5-4,390-96.) At the ensuing hearing, the Estate Creditors represented to the State

---

[4] The Amended Complaint contains five counts: (1) civil conspiracy; (2) fraudulent transfer of intellectual property; (3) fraudulent transfer of intellectual property lease; (4) aiding and abetting common law fraud; and (5) tortious interference. All five counts are predicated upon the same transfer of the Intellectual Property and seek recovery based upon the transfer. (A.148-203.)

Court that the Trustee was "not objecting to us [the Estate Creditors] bringing this action," and that the Trustee could "intervene or seek relief in the bankruptcy court," if she had an objection. (R.5-4,427.) The implication of counsel's representation was that the Estate Creditors had notified the Trustee of the intent to file the Amended Complaint and that the Trustee had somehow blessed the filing of it. In reality, the Estate Creditors had not notified the Trustee of their intent to file the Amended Complaint or obtained the Trustee's consent. (R.5-5, 144-47.)

James later sent a detailed letter to counsel for the Estate Creditors, explaining how the filing and prosecution of the Amended Complaint violated the automatic stay (the "Notification Letter"). (A.217-20.) The Notification Letter cited applicable case law and detailed exactly how the filing and prosecution of the Amended Complaint violated the stay. The Notification Letter did not seek damages or request reimbursement of attorneys' fees, but rather simply requested that the Estate Creditors dismiss the Amended Complaint as it should be deemed void due to the alleged stay violation. The Estate Creditors refused to dismiss the Amended Complaint and instead continued to prosecute it, including the taking of depositions, resulting in significant fees and expenses to James. (A.283-85.)

C. The dismissal with prejudice.

The bankruptcy court eventually determined that the Trustee's IP Transfer Claims could not be conveyed to TZ Acquisition. (A.204-16.) Shortly thereafter,

13

consistent with the Trustee's representations preceding the Auction, the Trustee filed a Motion to Dismiss, with prejudice, as to her IP Transfer Claims. (A.59-63.) In the Motion to Dismiss, the Trustee explained that, "[a]s part of the bidding process, the Trustee confirmed that if [her IP Transfer Claims] were retained, that they would be dismissed because the Trustee would not compete with the prevailing bidder.  The Trustee appreciates that all bidding was done with this understanding." (A.61.) Although TZ Acquisition and the Estate Creditors had notice of the Motion to Dismiss, they did not object to the dismissal with prejudice. The Court ultimately entered an Order dismissing the Trustee's IP Transfer Claims, with prejudice (the "Dismissal Order"). (A.64-66.) The Estate Creditors sought to amend the Dismissal Order so that the dismissal was without prejudice, but the bankruptcy court denied the request. (R.5-3,18-20.)

D. The orders on appeal.

The Estate Creditors, only after receipt of the Notification Letter, filed motions related to the automatic stay, one asking for a determination that the automatic stay was not in effect ("No Stay Motion") (A.221-25), and another asking for relief from stay to continue pursuing their IP Transfer Claims in state court ("Stay Relief Motion") (A.241-46). James opposed the Motions, contending, among other things, that the Estate Creditors could not establish "cause" for relief

14

from stay because the doctrine of res judicata precluded the Appellees from pursing the Estate Creditor's IP Transfer Claims in state court. (A.226-40, 263-80.)

In addition, considering the ongoing stay violation by the Estate Creditors, James filed a motion with the bankruptcy court asking for a determination that the Amended Complaint in state court be deemed void and for an award of damages ("Stay Violation Motion") (A.247-62.) After extensive briefing and a hearing on the three motions, the bankruptcy court denied the Stay Violation Motion ("Order Denying Stay Violation") (R.5-6, 114-24) (A.316-26), granted the No Stay Motion ("Order Determining No Stay") (A.329), and denied as moot the Stay Relief Motion ("Order Denying Stay Relief") (A.327-28).  In the written Order Denying Stay Violation, the bankruptcy court, without much explanation, retreated from its prior oral ruling in which it announced that it "must find the filing of the amended complaint was technically a violation of the stay" and instead found that there was no stay violation. (A.309.)

The practical effect of the rulings is that James now faces the same litigation by the Estate Creditors in state court as the litigation pursued against him and dismissed with prejudice by the Trustee in bankruptcy court. James faces this duplicative litigation even though the Trustee's promise of dismissal was the springboard for the estate's realization of $120,000 from the Auction. (A.146.) Accordingly, James timely filed his notice of appeal on October 27, 2016,

appealing the Order Denying Stay Violation, the Order Determining No Stay, and the Order Denying Stay Relief. (A.330-33.)

[intentionally blank for formatting]

## SUMMARY OF ARGUMENT

The application of res judicata is inescapable here considering that the bankruptcy court found that "the causes of action [in the Adversary Proceeding and the State Court Action] arise out of the same nucleus of facts."  In addition to sharing a common nucleus of operative facts, the Adversary Proceeding and the State Court Action share a common theory: that the transfer of the Intellectual Property was a de facto transfer of the membership interest in TZI. Yet, because the State Court Action was based upon state law claims and because the Adversary Proceeding was based upon bankruptcy law claims, the bankruptcy court concluded that the actions were somehow different for purposes of res judicata. Eleventh Circuit precedent is clear, however, that the substance of the causes of action, not the form, governs whether the actions are the same. Accordingly, the bankruptcy court erred in finding that res judicata does not bar the Estate Creditors' IP Transfer Claims against James.

The bankruptcy court's conclusion that the Trustee abandoned the IP Transfer Claims, rather than dismissed them, is also flawed. The Bankruptcy Code has a specific provision that governs abandonment, which provision sets forth the ways in which an asset may be abandoned, such as through a formal notice of abandonment. No abandonment was even attempted here. Moreover, the Trustee's

dismissal, with prejudice, was part and parcel of the Trustee's administration of the IP Transfer Claims.

Indeed, prior to the Auction, the Trustee, in order to "maximize the value for those assets [the IP Transfer Claims]," promised to dismiss the IP Transfer Claims, if retained by her. The Trustee's promise helped generate $120,000 for the estate as it ensured exclusivity for the winning bidder and assured James that he would not risk being the high bidder only to face additional litigation. The Estate Creditors, who had opportunity to object to the dismissal and who are beneficiaries of the $120,000 in sale proceeds, are now bound by the Trustee's dismissal of her IP Transfer Claims. The doctrine of res judicata precludes the Estate Creditors from suing James to recover the Intellectual Property, and likewise precludes any finding of "cause" to justify granting the Stay Relief Motion. Any conclusion to the contrary would mean the Estate Creditors would have their cake and eat it too – but three times: once with the $120,000 the Trustee recovered, another with any recovery they realize from TZ Acquisition, and a third with any recovery they realize directly from their IP Transfer Claims. Res judicata demands a different result.

The bankruptcy court also erred in determining, contrary to its prior oral ruling, that the automatic stay did not prohibit the Estate Creditors from filing and pursuing their IP Transfer Claims against James.  Without question, the Estate

Creditors' IP Transfer Claims derive from "claim[s] against the Debtors"[5] and are therefore stayed by operation of 11 U.S.C. § 362(a)(1). The automatic stay also protects the Trustee's exclusivity to pursue fraudulent transfer type claims.

In this instance, the Estate Creditors adopted the Trustee's theory of recovery and filed the corresponding Amended Complaint without even seeking relief from stay first.  The bankruptcy court seemingly agreed with James' analysis that the Amended Complaint violated § 362(a)(1) of the Bankruptcy Code by finding that "Respondents [Appellees] must necessarily have a claim against the Debtors,"[6] but concluded that the subsection (a)(1) violation was insufficient and that the Estate Creditors had to violate subsection (a)(3) as well. Subsections (a)(1)-(8) are intended to be read in the disjunctive, not conjunctive. A violation of any subsection is a violation of the stay; multiple offenses are not necessary.

Based upon the plain language of § 362, James, as an individual, is entitled to the protection of the automatic stay and is entitled to damages for the Estate Creditors' violation thereof.  Accordingly, the Court should reverse the rulings of the bankruptcy court and remand with instructions to (i) apply the doctrine of res judicata by denying the Stay Relief Motion and barring the Estate Creditors from

---

[5] "That assertion is true," as admitted by the Bankruptcy Court.

[6] In fact, in the Court's oral ruling, it found a "technical" violation of the stay, but retreated from that finding in the written opinion by requiring, contrary to any established precedent, multiple violations.

pursing the Amended Complaint, (ii) void the Amended Complaint as a violation of the automatic stay, and (iii) award damages to James, including attorneys' fees and costs, against the Estate Creditors for the violation of the automatic stay.

[intentionally blank for formatting]

## **ARGUMENT**

I.   THE BANKRUPTCY COURT ERRED IN REFUSING TO APPLY THE DOCTRINE OF RES JUDICATA TO BAR THE ESTATE CREDITORS FROM LITIGATING CLAIMS ARISING OUT OF THE SAME NUCLEUS OF OPERATIVE FACTS AS CLAIMS THAT HAD BEEN ADMINISTERED AND DISMISSED, WITH PREJUDICE, BY THE TRUSTEE.

The bankruptcy court should have applied the doctrine of res judicata to preclude duplicative litigation arising out of the same nucleus of facts, and in turn, should have determined that the Estate Creditors failed to establish the necessary "cause" to obtain relief from stay. The doctrine of res judicata bars a previously litigated claim from being litigated again if:

(1)   the prior decision was rendered by a court of competent jurisdiction;

(2)   there was a final judgment on the merits;

(3)   both cases involve the same parties or their privies; and

(4)   both cases involve the same causes of action.

In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). Each of the four elements is applicable here. First, the bankruptcy court clearly had jurisdiction as the Trustee's IP Transfer Claims constitute core proceedings.[7] 28 U.S.C. § 157(b)(2)(F) and (H).   Second, the Dismissal Order dismisses the IP Transfer

---

[7] Jurisdiction is not an issue in dispute and thus James provides an analysis only as to the other elements of res judicata.

Claims, with prejudice, which operates as a final adjudication on the merits. Third, the Estate Creditors' IP Transfer Claims rest upon the same set of facts and theories as the Trustee's IP Transfer Claims, thereby rendering the causes of action as substantially similar, or the same, for preclusion purposes. Finally, the Estate Creditors are privies of the estate and are therefore bound by the outcome of the Trustee's litigation on behalf of the estate, including by the Trustee's pursuit and dismissal of her IP Transfer Claims.

This Court should therefore reverse the bankruptcy court's decisions by denying the Stay Relief Motion and No Stay Motion because the elements of res judicata are each clearly present to bar the Estate Creditors' IP Transfer Claims and therefore the Estate Creditors cannot establish "cause" to warrant relief from stay. In re Residential Capital, LLC, 508 B.R. 838, 848 (Bankr. S.D.N.Y. 2014) (explaining that movant cannot establish cause to lift the stay because litigating claims barred and discharged by the plan in any forum would be futile); see In re Mitchell, 281 B.R. 90, 93-94 (Bankr. S.D. Ala. 2001) (finding that creditors are bound by confirmed Chapter 13 plan).

> A. By dismissing the IP Transfer Claims, the Trustee administered her claims against James to final judgment; she did not abandon them.

A voluntary dismissal with prejudice generally "constitutes a final judgment on the merits which bars a later suit on the same cause of action." Astron Indus.

Assoc., Inc. v. Chrysler Motors Corp., 405 F.2d 958, 960 (5th Cir. 1968) (finding that a bankruptcy trustee's dismissal wih prejudice of a claim was a final judgment on the merits).[8] As explained by the Eleventh Circuit, "a judgment of dismissal pursuant to Rule 41[9] should be given the same res judicata effect as any other judgment." Norfolk Southern Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1288 (11th Cir. 2004) (finding that a voluntary dismissal with prejudice operates as an adjudication on the merits unless a settlement agreement dictates otherwise) (citing Astron, 405 F.2d at 960). Thus, a voluntary dismissal with prejudice has preclusive effect as to the claims dismissed.

In this case, the Trustee moved to dismiss her IP Transfer Claims with prejudice. (A.59-63.) The bankruptcy court, after notice to the Estate Creditors and opportunity to object, granted the Trustee's motion and entered the Dismissal Order, expressly stating that the dismissal was with prejudice. (A.64-66.) Absent a settlement agreement dictating a different outcome, which does not exist here, the voluntary dismissal with prejudice must operate as a final adjudication on the merits.

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[9] Federal Rule of Civil Procedure 41(a) provides the procedure for voluntary dismissal and its effect.

Despite the plain language of the Dismissal Order, which provides for a dismissal with prejudice, and despite the Trustee's promise of dismissal, the bankruptcy court held that the Trustee abandoned – or "elected not to pursue" – the IP Transfer Claims. (A.325.) That conclusion is wholly unsupported by the Bankruptcy Code, and is belied by the fact that the Trustee received significant value to the tune of $120,000 in connection with the Auction, which was predicated upon a dismissal of any retained causes of action.

The Record makes it clear that the Trustee never abandoned the claims. The Bankruptcy Code has a specific provision, 11 U.S.C. § 554, which governs abandonment. Section 554 provides three ways in which abandonment occurs: (1) voluntary abandonment by the trustee after notice and hearing when the property is of inconsequential value; (2) upon request of a party in interest and after notice and hearing when the property is of inconsequential value; and (3) by operation of law when the case is closed, provided that the property was scheduled by the debtor.

In this instance, the Bankruptcy Case is still open (A.306 & 318; R.5-1), so abandonment could not have occurred by operation of law. Therefore, under subsections (1) and (2), abandonment could only have occurred upon notice and hearing.  Federal Rule of Bankruptcy Procedure 6007 likewise requires notice of any proposed abandonment or disposition, allows parties in interest fourteen days within which to object, and requires a hearing if an objection is filed. The

bankruptcy court's Local Rule 6007-1 also demands affirmative action by the trustee. Here, neither the Trustee nor any parties in interest ever filed a notice of abandonment or requested an abandonment of the Trustee's IP Transfer Claims. "[A]s long as a bankruptcy proceeding is still open there can be no abandonment by the trustee of any property of the estate, including causes of action, without formal order of the bankruptcy court authorizing such abandonment." In re Teltronics Services, Inc., 39 B.R. 446, 449 (Bankr. E.D.N.Y. 1984).

Abandonment simply did not occur in this case. Instead, the Trustee, after prosecuting the claims for well over a year, first attempted to settle the IP Transfer Claims. (A.67-91.) She then marketed the IP Transfer Claims and attempted to sell them at the Auction. (A.92-105.) After the successful auction, which ultimately generated $120,000 for the benefit of the estate, the Trustee then dismissed the retained IP Transfers Claims, with prejudice, consistent with her prior agreement, which "maximize[d] the value for the assets." (A.106-07, 144, 145-47, 59-66.) Accordingly, the Trustee's dismissal cannot be construed as a mere abandonment.

> B. The Estate Creditors' IP Transfer Claims against James arise from the same nucleus of operative facts as the Trustee's causes of action against James.

The bankruptcy court concluded that the Trustee's IP Transfer Claims and the Estate Creditors' IP Transfer Claims were not the same causes of action, even though they were undeniably based upon the same factual predicate and even

though they both sought relief based upon an allegedly fraudulent transfer.  Indeed, as acknowledged by the bankruptcy court, "the causes of action arise out of the same nucleus of facts." (A.324.) Yet, the bankruptcy court refused to apply the doctrine of res judicata because the Trustee's IP Transfer Claims were based upon bankruptcy law causes of action and the Estate Creditors' IP Transfer Claims were based upon state law causes of action. (A.321.) The bankruptcy court's ruling elevated form over substance, which is contrary to Eleventh Circuit law and demands reversal.

"In regard to the identity of the two lawsuits, it is the substance of the actions that must be compared and not their form." Astron, 405 F.2d at 961. Thus, "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action . . . the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." Piper, 244 F.3d at 1297 (quoting Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1239 (11th Cir. 1999)).

In Piper, the Eleventh Circuit determined that a Chapter 11 confirmation order did not bar state court causes of action for breach of contract and for constructive trust between two non-debtor parties who had worked together under a cooperation agreement to submit a plan of reorganization for the debtor, which plan was ultimately rejected. In that case, the state court action involved a separate and distinct dispute between two non-debtor parties, which dispute was not in any

26

way resolved or addressed in the confirmation order. The Eleventh Circuit refused to apply the doctrine of res judicata under that scenario, concluding that its "task is to compare the factual issues explored in the first action with the factual issues to be resolved in the second" and "the connection between the core facts of the state court suit . . . is simply too attenuated to justify res judicata." Id. at 1302.

By contrast, the Fifth Circuit in Astron, applying effectively the same substance-over-form analysis used in Piper, held that a claim brought by the debtor's parent corporation was the same claim as the one settled by the trustee in the debtor's bankruptcy case, even though the theories of recovery were different. 405 F.2d at 961-62. The district court, therefore, dismissed the parent company's suit, citing the trustee's dismissal with prejudice as having preclusive effect. In affirming the dismissal based on res judicata, the Fifth Circuit concluded that the trustee's stipulation of dismissal with prejudice of the debtor's claims against Chrysler was a final judgment on the merits barring a later suit by the debtor's parent. Id. at 960.  In rendering its decision, the court focused on the substance of the causes of action, not the labels:

> Whether the theory of recovery be misrepresentation to Transcontinental, misrepresentation to Astron, breach of contract with Transcontinental, or breach of contract with Astron, the operative wrong remains the same, the evidence necessary to sustain the allegation is the same, and a different judgment in this suit would impair rights under the earlier dismissal.

Id. at 962.

Likewise, the court in In re Tessmer held that alternative theories of recovery, such as conspiracy, related to the purported fraudulent transfer action are barred by the results of a trustee's pursuit of the fraudulent transfer action. 329 B.R. 776, 779-80 (Bankr. M.D. Ga. 2005). "Thus, Ms. Carringer [the creditor] can't pursue a conspiracy claim without also pursuing a fraudulent transfer claim. The two claims are not severable, so Ms. Carringer's right to sue has been cut off by [the] Trustee." Id.

As with the claims in Astron and Tessmer, the Trustee's IP Transfer Claims and the claims within the Estate Creditors' Amended Complaint arise from the same factual predicate, as acknowledged by the bankruptcy court. (A.324.) The crux of the Trustee's claims and the Estate Creditors' claims directly stem from the same operative allegation: that the transfer of the Intellectual Property was a de facto transfer of the Debtors' membership interest in TZI. Each count of the five counts in the Amended Complaint is indeed predicated upon the transfer.[10] There is no way for the Estate Creditors to escape the "commonality of the facts" between their claims and the Trustee's claims.   Piper, 244 F.3d at 1295. The following sample of allegations illustrates the blatant commonality in proof (if not overt copy

---

[10] The Amended Complaint contains no less than 133 express references to the transfer of the Intellectual Property, and even a cursory overview of the Amended Complaint demonstrates that the entire foundation of the Amended Complaint rests on the transfer of the Intellectual Property. (A.148-203.)

and paste) between the Trustee's IP Transfer Claims and the Estate Creditors' IP

Transfer Claims:

| Proof | Trustee's Allegations<br>For § 548 Counts | Estate Creditors' Allegations<br>General for **all** Counts<br>(including Chapter 726) |
|---|---|---|
| Not reasonably equivalent value | The value of the consideration received was not reasonably equivalent to the value of the assets improperly transferred. (A.44, ¶233.) | The value of the consideration was not reasonably equivalent to the value of the assets improperly transferred. (A.173, ¶136.) |
| Intent to defraud creditors | The transfer was incurred with actual intent to hinder, delay, or defraud those investor creditors that declined to participate in the improper transactions. (A.43, ¶227.) | The transfer was incurred with actual intent to hinder, delay or defraud the Lenders. (A.183, ¶206.) |
| Intent to retain the assets | The Debtors intended to effectively continue the business but discard liabilities through personal bankruptcy, even though the business assets would have otherwise been available in bankruptcy but for the transfer. (A.43, ¶227.) | The Hintzes intended to effectively continue the business of TutoringZone but discard liabilities through personal bankruptcy, even though the business assets would have otherwise been available in bankruptcy but for the transfer. (A.183, ¶207.) |
| Other badges of fraud | Customers experienced a seamless transition because the intellectual property transfer allowed TZ2 to use all marks and other indicia of TutoringZone's business. (A.43, ¶222.) | Customers experienced a seamless transition because the intellectual property transfer allowed TutoringZone II to use all marks and other indicia of TutoringZone's business. (A.175, ¶152.) |

29

| | | |
|---|---|---|
| | The only changes were that the business had a new owner and the business was "on paper" no longer burdened by the debts incurred for ordinary business expenses and any practical requirement to service investor debts owed by the Debtors. (A.43, ¶222.) | The only changes were that the business had a new owner, James, and the business was "on paper" no longer burdened by the debts incurred for ordinary business expenses and any practical requirement to service loans owed by the Hintzes. (A.175, ¶154.) |
| | The Debtors improperly exerted control over TutoringZone to cause it to transfer its substantial assets while receiving no consideration. (A.43, ¶226.) | The Hintzes, with James' and Childers' knowledge and prompting, improperly exerted control over TutoringZone to cause it to transfer its substantial assets while receiving no consideration in return. (A.179, ¶177.) |

Yet, in violation of <u>Piper</u>, the bankruptcy court's analysis ultimately elevated form over substance and found that the causes of action are not the same because "[c]ounts XIII-XV of the Trustee's complaint did not assert causes of action under the Florida fraudulent transfer statute, but rather strictly bankruptcy causes of action." <u>Id</u>. This conclusion plainly contradicts the established res judicata analysis adopted by the Eleventh Circuit.

Moreover, it is well-settled that § 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes both provide for the recovery of fraudulent transfers and require identical factual proof. <u>In re Old Naples Securities, Inc.</u>, 343 B.R. 310, 319 (Bankr. M.D. Fla. 2006) ("Both provisions require the proof of substantially

identical elements, and have been interpreted in the same manner.") If labels controlled, rather than substance, then plaintiffs could easily circumvent the doctrine of res judicata by bringing lawsuits, based upon the same facts and circumstances, under different causes of actions. Such an interpretation of the doctrine would stifle resolution and promote endless litigation.

### C. The Estate Creditors are bound by the actions of the Trustee, and thus are bound by res judicata as to the dismissal with prejudice of the claims against James.

Finally, the bankruptcy court erred in holding that, for res judicata purposes, there is not an identity of parties between the parties to the Trustee's Adversary Proceeding and the parties to the Estate Creditors' Amended Complaint. It is well established that estate creditors are in fact bound by the trustee's actions; indeed, creditors are privies of bankruptcy trustees. See In re Fordu, 201 F.3d 693, 705 (6th Cir. 1999) ("A bankruptcy trustee is the representative of all creditors of the bankruptcy estate.")

Generally speaking, "[t]he concept of privity is applicable where a court wishes 'to justify the binding effect of a judgment on one who was not a party to the earlier suit, but whose interest was validly represented in that suit.'" Astron, 405 F.2d at 961 (5th Cir. 1968) (quoting 1B Moore, Federal Practice P0.411(1), pp. 1254-1255 (2d ed. 1965)). In the bankruptcy context, creditors are necessarily bound by the outcome of the trustee's litigation, as trustees serve as the fiduciary

31

representative of the creditors. See Astron, 405 F.2d at 960-61; JAWHBS LLC v. Arevalo, Case No. 15-24176-CIV, 2016 WL 4142498, *5 (S.D. Fla. Aug. 4, 2016) (explaining that, when a claim is general in nature, "with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.") (quoting St. Paul Fire & Marine Ins. Co. v. PepsiCo., Inc., 884 F.2d 688, 701 (2d Cir. 1989)).

In Astron, discussed supra, the debtor's parent company, Astron Industries, was bound by the bankruptcy trustee's settlement with Chrysler over the breach of a supply contract.  In its reasoning, the Fifth Circuit relied, in part, on Astron's failure to object to the trustee's settlement or appeal the bankruptcy referee's approval thereof, which is akin to the situation in the instant case. Astron was ultimately bound by the trustee's dismissal with prejudice. 405 F.2d at 960. The court's holding protects litigants from duplicate liability and encourages settlements with estates for the benefit of their creditors.

As a result of the binding nature of the trustee's litigation, "creditors do not regain the right to sue unless the trustee abandons the claim or [the trustee] 'no longer has a viable cause of action' because, for example, the statute of limitations has run." Tessmer, 329 B.R. at 779. When the trustee pursues and resolves the avoidance action, as the Trustee did in this case, the creditor can never regain

standing and is instead bound by the trustee's actions. See In re Berg, 376 B.R. 303, 312 (Bankr. D. Kan. 2007) ("The Trustee did not abandon the claim, it has not been determined that Trustee did not have a viable claim, and there is no court order allowing the Bank to pursue the claim."). See also In re Medomak Canning, 922 F.2d 895 (1st Cir. 1990) (finding that secured creditors with wholly unsecured claims were bound by the trustee's actions resolving equitable subordination claims).

In the instant case, as in Astron, Arevalo, Tessmer, and Berg, the Estate Creditors are bound by the decision of the Trustee. Consistent with the Auction and the Trustee's prior promise of dismissal, the Trustee dismissed her IP Transfer Claims with prejudice. (A.59-66.) Even though the Estate Creditors received notice of the conditions of the sale and the Motion to Dismiss, they did not object. As creditors of the bankruptcy estate, who had meaningful opportunities to be heard on the issue of the sale, transferability, and dismissal, the Estate Creditors are bound by the Trustee's dismissal of her IP Transfer Claims and the resulting adjudication on the merits. Thus, the Estate Creditors' IP Transfer Claims are precluded by res judicata and the Estate Creditors cannot establish "cause" in order to justify relief from stay under § 362(d)(1) of the Bankruptcy Code. See In re Mitchell, 281 B.R. 90, 93-94 (Bankr. S.D. Ala. 2001) (holding preclusion is a

legitimate basis for denying stay relief to pursue the precluded claim); <u>In re Residential Capital LLC</u>, 508 B.R. 838, 847-449 (Bankr. S.D.N.Y. 2014) (same).

II.   **THE BANKRUPTCY COURT ERRED IN HOLDING THAT THE ESTATE CREDITORS' COMMENCEMENT AND CONTINUATION OF A LAWSUIT TO RECOVER PRE-PETITION CLAIMS AGAINST THE DEBTOR DID NOT CONSTITUTE A VIOLATION OF AUTOMATIC STAY UNDER § 362(A) OF THE BANKRUPTCY CODE AND WAS NOT VOID.**

The bankruptcy court should have held that the Estate Creditors willfully violated the automatic stay when they filed their Amended Complaint in State Court. When the Estate Creditors filed the Amended Complaint, the automatic stay was still in place and the Trustee still owned her IP Transfer Claims to the exclusion of all creditors. The Trustee's exclusivity was fundamental to the success of the sale and the benefit to the estate. However, the Estate Creditors upended the results of the sale and damaged James by filing the Amended Complaint in violation of the automatic stay. Thus, this Court should reverse the bankruptcy court's conclusion that the Estate Creditors did not violate the automatic stay, order that the Amended Complaint is void, and award James his damages resulting from the violation of the stay.

A. <u>The filing of the Amended Complaint violated the automatic stay, which was still in effect.</u>

While the Trustee's IP Transfer Claims were still pending, the Estate Creditors filed and prosecuted their own IP Transfer Claims via the Amended

Complaint in state court, which is premised upon the same allegations and theories as the Trustee's IP Transfer Claims. The Estate Creditors' filing and prosecution of the fraudulent transfer type claims violated § 362(a) of the Bankruptcy Code, which establishes the automatic stay. The pertinent subsection here is (a)(1), which precludes:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or **to recover a claim against the debtor** that arose before the commencement of the case under this title . . . .

(emphasis added). The plain language of § 362(a) prohibits creditors from seeking to recover prepetition claims against the debtor.  In re Saunders, 101 B.R. 303, 305-06 (Bankr. N.D. Fla. 1989). See Steffen v. Gray, Harris, & Robinson, P.A., 283 F. Supp. 2d 1272 (M.D. Fla 2003), aff'd, 138 F. App'x 297 (11th Cir. 2005) ("Even though this Court has concluded that the fraudulent transfer action was not property of the estate, the automatic stay barred the SEC from seeking avoidance of the transfers until the stay was lifted or terminated."); In re C.D. Jones & Co., Inc., 482 B.R. 449 (Bankr. N.D. Fla. 2012) (trustee has exclusivity over avoidance actions); In re Xenerga, Inc., 449 B.R. 594 (Bankr. M.D. Fla 2011) (trustee has exclusivity over alter ego action).  The issue, therefore, is whether fraudulent transfer claims constitute claims "against the debtor."

The court in <u>Saunders</u> answered that question. 101 B.R. at 305-06. In that case, the court considered whether a creditor, who held a pre-petition claim against the debtor, could continue pursuing the creditor's fraudulent transfer action to recover on its pre-petition claim. In light of the plain language of § 362(a)(1), the court determined that the automatic stay prohibited the creditor from taking action to recover on its pre-petition claim.[11] The court reasoned as follows:

> At first blush it appears that, as the Fifth Circuit held in <u>S.I. Acquisition, Inc.</u>, § 362(a)(1) "is available only for the debtor's benefit and does not prohibit actions against non-bankrupt third parties or codefendants." 817 F.2d at 1147. On its face, however, § 362(a)(1) stays not only any action or proceeding "against the debtor" but also actions "to recover a claim against the debtor." While a fraudulent transfer action may be an action against a third party, it is also an action "to recover a claim against the debtor." Absent a claim against the debtor, there is no independent basis for the action against the transferee.

<u>Id</u>. at 305. This interpretation is consistent with the legislative history of § 362, which provides that subsection (a)(1) is "designed to prevent the issuance of a writ of execution by a judgment creditor of the debtor to obtain property that was property of the debtor before the case <u>but that was transferred</u>, subject to the

---

[11] An earlier motion filed by Estate Creditor Intermed Biomedical's sister entity, Intermed Recovery, actually admitted that <u>Saunders</u>' interpretation of § 362(a)(1) would preclude an action by a creditor of the estate against third parties for avoidance of a pre-petition transfer of the debtor's assets is stayed because such an action constitutes an action "to recover a claim against the debtor." (A.252-53.)

judgment lien, before the case." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 341 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6297 (emphasis supplied). Thus, § 362(a)(1) operates to stay a creditor with respect to a claim against the debtor and precludes a creditor from commencing or continuing a fraudulent transfer action **or from utilizing the process of another court**.  In re Saunders, 101 B.R. at 305–06 (emphasis added).

In this instance, the bankruptcy court, correctly, agreed that the Estate Creditors, in order to bring the IP Transfer Claims, "must necessarily have a claim against the Debtors" and provided that this "assertion is true." (A.317-18.) In other words, the bankruptcy court found a clear violation of § 362(a)(1), which was consistent with the bankruptcy court's prior oral ruling in which the bankruptcy court announced that it "must find that the filing of the amended complaint was technically in violation of the stay . . . ." (A.309.) Yet, in its later written opinion, the bankruptcy court retreated from its oral ruling, instead finding that this violation "alone" does not constitute a violation of the stay and then inexplicably shifted the focus to a separate subsection, § 362(a)(3). (A.318.) The additional analysis related to § 362(a)(3) was superfluous. Subsections (a)(1)-(8) are read in the disjunctive, not the conjunctive. See, e.g., Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1031 (3d Cir. 1991) (explaining disjunctive aspects of subsection (a)(1)). Offenses of multiple subsections of § 362(a) are not necessary.

Aside from being impertinent, the bankruptcy court's (a)(3) analysis was unavailing. The analysis focused on whether the Estate Creditors were pursing property of the Debtors. The Amended Complaint clearly did that by adding the "alter ego" claim, which contends that the transfer of the Intellectual Property from TZI was actually a transfer from the Debtors, as the alter ego of TZI. (A.185-87.) The "alter ego" claim brings the Amended Complaint within the purview of the estate as the Trustee enjoys exclusive jurisdiction with respect to alter ego claims that are general in nature affecting all creditors (as opposed to any one creditor). In C.D. Jones, the bankruptcy court relied, in part, upon the reasoning of Xenerga, which held that general alter ego claims were property of the estate and that only the Chapter 7 trustee may bring an alter ego claim on behalf of the general creditor body. 482 B.R. at 454-55. Thus, by pursuing an alter ego theory, the Estate Creditors infringed upon the Trustee's exclusive standing and clearly violated the automatic stay.

The bankruptcy court's discussion of whether the Amended Complaint was filed pre- or post-petition was equally unavailing and contrary to the plain language of the Bankruptcy Code. The governing subsection, § 362(a)(1), specifically pertains to the "commencement or continuation" of actions to recover a claim against the debtor. Hence, the timing of the filing of the Amended

Complaint is immaterial to the analysis of whether it seeks to recover a claim against the debtor.

When the Estate Creditors filed the Amended Complaint, the automatic stay was still in effect. Section 362(c) sets forth the conditions under which the stay terminates. Pursuant to that subsection, the stay continues until: (1) the case is closed; (2) the case is dismissed; (3) entry of the discharge; or (4) until such property is no longer property of the estate. None of those conditions were present here. The case had not been closed or dismissed, the discharge had not been issued, and the Trustee still owned all of TZI and all of the claims in the Adversary Proceeding. (R.5-2.) The timing alone established a stay violation.

Ultimately, the bankruptcy court's decision seemed to be driven by what it described as "other factors" rather than the legal underpinnings of the Bankruptcy Code and applicable case law. (R.325.)

### B. The Amended Complaint should be deemed void.

As set forth above, the filing and prosecution of the Amended Complaint violated § 362(a)(1) of the Bankruptcy Code. The Amended Complaint should therefore be deemed void. Any action in violation of the automatic stay is void, even if a party fails to seek redress declaring it so. Borg-Warner Acceptance Corporation v. Hall, 685 F.2d 1306 (11th Cir. 1982) (holding that actions taken in violation of the automatic stay are void and without effect); In re Kilmer, 501 B.R.

208 (Bankr. S.D.N.Y. 2013). <u>Accord</u> <u>Matter of Ring</u>, 178 B.R. 570 (Bankr. S.D. Ga. 1995) (holding that in the Eleventh Circuit, actions in violation of the automatic stay are an absolute nullity and void automatically). Furthermore, the Estate Creditors did not offer a viable basis for retroactive stay relief to avoid the consequences of their willful violation. <u>See</u> <u>In re Albany Partners, Ltd.</u>, 749 F.2d 670, 675 (11th Cir. 1984) (holding that courts "should be especially hesitant to validate acts during the pendency of the stay . . . ."); <u>In re Hewett</u>, 2016 WL 4401034 (Bankr. M.D. Fla. 2016) (retroactive relief denied because of delay and prejudice), <u>In re Brown</u>, 251 B.R. 916 (M.D. Ga. 2000) (setting aside foreclosure sale as void even though violation was unintentional). In this instance, the Amended Complaint is void due to the violation of the stay and the Estate Creditors' IP Transfer Claims should be dismissed.

C. <u>The willful nature of the violation entitles James to recover damages pursuant to the plain and unambiguous language of § 362(k).</u>

The Estate Creditors' filing and prosecution of the Amended Complaint constituted a knowing and willful violation of the automatic stay.  FLH, together with the other Estate Creditors, filed the Amended Complaint on May 20, 2016, which added a section entitled "TutoringZone as the Alter Ego of the [Debtors]" and which adopted the Trustee's theory that the transfer of the Intellectual Property was a de facto transfer of the membership interest in TZI. (A.176, 185-87, 193.)

40

Without question, the Amended Complaint was predicated upon claims against the Debtor and was premised upon a theory of relief identical to the Trustee's. At that time, the Estate Creditors were fully aware that the Trustee had attempted to convey the IP Transfer Claims to TZ Acquisition, which is an entity related to FLH,[12] and that the matter was under advisement with the bankruptcy court. Despite knowledge of the pending bankruptcy case, knowledge of the pending Adversary Proceeding, and knowledge of the pending sale, the Estate Creditors contested James' motion to dismiss their IP Transfer Claims. At the ensuing hearing in state court, the Creditors falsely suggested that the Trustee was aware of the Amended Complaint and had no objections to their filing of the Amended Complaint. (R.5-4, 390-96.) In reality, the Estate Creditors had not notified the Trustee of the Amended Complaint or obtained her approval. (R.5-5, 144-47.) The Estate Creditors likewise misstated the effect of a stay relief order obtained by a related entity, Intermed Recovery, falsely representing that Intermed's stay relief gave the Estate Creditors the right to proceed. Id. In reality, Intermed was a creditor of TZI and was pursuing recovery of a claim against TZI, not against the Debtors.

---

[12] FLH Holdings and TZ Acquisition both disclose Steven Fieldman as their managing member with the Division of Corporations, Florida Department of State. (A.230.)

The Estate Creditors' continued prosecution of the Amended Complaint after receipt of the Notification Letter, and before any ruling on their motion for relief from stay, further illustrates the willful nature of their conduct. The Notification Letter explained the violation and simply requested that the Estate Creditors dismiss their IP Transfer Claims. (A.217-20.) Yet, the Estate Creditors refused and continued to prosecute their claims against James. Thus, after being given ample opportunity to address the violations of the automatic stay, the Estate Creditors nevertheless forged ahead in their IP Transfer Claims. In light of the Estate Creditors' willful violation of the automatic stay, not only is the Amended Complaint void, but James is also entitled to damages, including costs and attorneys' fees, and possibly punitive damages. See 11 U.S.C. § 362(k)(1); see Parker v. Credit Central South, Inc., 634 Fed. Appx. 770 (11th Cir. 2015) (holding that an award of damages, including fees, is mandatory when the stay is violated willfully).

> ### D. James had standing to enforce the automatic stay because the automatic stay protects him from facing duplicative litigation and liability.

The bankruptcy court should have concluded that James had standing to enforce the violation of the automatic stay, but instead it found that James lacked prudential standing because he did not fall within the "zone of interests" protected

42

by § 362.  The plain language of § 362(k), however, makes clear that James has standing.

Section 362(k)(1) gives individuals like James a remedy for stay violations and states in pertinent part:

> an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The plain language clearly gives James standing without the need to speculate as to the protected zone of interests. See Lexmark Intern., Inc. v. Static Control Components, Inc., 134 S.Ct. 1377 (2014) and In re Teleservices Group, Inc., 463 B.R. 28 (Bankr. W.D. Mich. 2012). The Supreme Court's ruling in Lexmark dictates this conclusion. In Lexmark, the Supreme Court analyzed whether a counter-plaintiff had standing under the Lanham Act to bring a claim for false advertising. The Court clarified that the zone-of-interests tests for prudential standing is not especially demanding, and stated that the analysis is "a straightforward question of statutory interpretation." 134 S.Ct. at 1388. "[T]he test 'forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statue that it cannot reasonably be assumed that' Congress authorized that plaintiff to sue." Id. at 1389 (quoting Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 132 S.Ct. 2199, 2210 (2012)). In applying the test, the Supreme Court found that the counter-

plaintiff fell within the protection of the Lanham Act to counter-sue for false advertising.

In the instant case, James is clearly within the zone-of-interests, as illustrated by Teleservices.   463 B.R. at 32-34. In Teleservices, Huntington Bank faced litigation by the trustee and a creditor in connection with alleged fraudulent transfers. Even though Huntington was not a creditor of the estate, the court still found that Huntington was protected by the automatic stay. The court reasoned that Huntington had the possibility of having to pay twice for the same alleged wrong. Id. at 33. Accord In re Ampal-American Israel Corp., 502 B.R. 361 (Bankr. S.D.N.Y. 2013); In re Clemmer, 178 B.R. 160 (Bankr. E.D. Tenn. 1995); Ring, 178 B.R. at 577-81.

Similarly, James has standing to invoke § 362(k) because he was injured by the Estate Creditors' violation of the automatic stay. Like Huntington in Teleservices, James was facing two fronts of litigation based upon the same purported transfer.

James' argument to invoke the automatic stay is even more compelling, though than Teleservices. First, he is a creditor of the estate. (A.2.) Secondly, even after the dismissal, with prejudice, of the Trustee's IP Transfer Claims, James still faces litigation based upon the same transfer. This is not the result contemplated by the Auction, which was premised upon a representation by the Trustee that the

estate (and thus its creditors) would no longer pursue such litigation. (A.106-07.) In fact, this was such a clear understanding that James bid $115,000 to buy the claims in the Adversary Proceeding and TZI. (A.126, 281-88, 144-47.) He would not have bid as high – and thus the estate would have yielded far less benefit – without the representation by the Trustee that James would in effect be buying peace if he was the successful bidder. In other words, the exclusivity of the automatic stay inured to the benefit of the successful bidder to prevent competition and to the benefit the estate through spirited bidding. Notably, that significant value generated by the Auction inured to the benefit of the Estate Creditors, who are now trying to collect again independently on the same cause of action the Trustee administered. The filing and prosecution of the Amended Complaint is a clear violation of the automatic stay that has injured James. Accordingly, the Court should reverse and direct the bankruptcy court to award James his damages for the Estate Creditors' violation of the automatic stay.

[intentionally blank for formatting]

45

## **CONCLUSION**

The fact that the Amended Complaint and the Adversary Proceeding arise out of – and fundamentally rely on – the same nucleus of facts compels the application of the doctrine of res judicata to bar the Estate Creditors from prosecuting the Amended Complaint. James, therefore, requests that this Court reverse the bankruptcy court by finding that the Estate Creditors did not establish "cause" to warrant relief from stay. James specifically request that this Court reverse the bankruptcy court's ruling with respect to the Stay Relief Motion and the No Stay Motion by denying the Stay Relief Motion and by determining that the automatic stay was in place.

James further requests that this Court reverse the bankruptcy court's ruling in the Order Denying Stay Violation by finding that the filing of the Amended Complaint violated § 362(a)(1), as originally acknowledged by the bankruptcy court in its oral ruling and as seemingly later acknowledged by the bankruptcy court in its written Order Denying Stay Violation.  James further requests that this Court find that the filing and continued prosecution of the Amended Complaint was willful, thereby entitling James to damages, including attorneys' fees, plus punitive damages. James requests that this Court remand to the bankruptcy court for further findings as to the amount of damages.

**INITIAL BRIEF OF APPELLANT, CHRISTOPHER M. JAMES**

Dated January 27, 2017.

Respectfully Submitted,

*/s/ Ryan E. Davis*_____
RYAN E. DAVIS
Florida Bar No. 0179851
rdavis@whww.com
C. ANDREW ROY
Florida Bar No. 91629
aroy@whww.com
WINDERWEEDLE, HAINES, WARD
  & WOODMAN, P.A.
Post Office Box 880
Winter Park, FL 32790-0880
 (407) 423-4246
Attorneys for Christopher James

# <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. Bankr. P.
   8015(a)(7)(B) because:

   ☒    this brief contains 10,290 words, excluding the parts of the brief
        exempted by Fed. R. Bankr. P. 8015(a)(7)(B)(iii), *or*

   ☐    this brief uses a monospaced typeface and contains #### lines of text,
        excluding the parts of the brief exempted by Fed. R. Bankr. P.
        8015(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. Bankr. P.
   8015(a)(5) and the type style requirements of Fed. R. Bankr. P. 8015(a)(6)
   because:

   ☒    this brief has been prepared in a proportionally spaced typeface using
        Microsoft Word in 14-point Times New Roman font, *or*

   ☐    this brief has been prepared in a monospaced typeface using
        _____with _____.

                          */s/ Ryan E. Davis*_____
                          RYAN E. DAVIS
                          Florida Bar No. 0179851

## <u>CERTIFICATE OF SERVICE</u>

  I HEREBY CERTIFY that on January 27, 2017, a true and correct copy of the foregoing has been furnished via **CM/ECF to**: Robert D. Wilcox, Esq., 814 AlA North, Suite 202, Ponte Vedra Beach, FL 32082, rw@wlflaw.com.

        */s/ Ryan E. Davis* _____
        RYAN E. DAVIS
        Florida Bar No. 0179851